UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 3:03CR179(SRU) |
| | : | |
| REYNALDO ARROYO | : | January 6, 2006 |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

On October 18, 2005, the United States Court of Appeals for the Second Circuit granted the defendant's motion, which had been made with the Government's consent, to dismiss the appeal, to vacate the judgment, and to remand for entry of a new judgment and for re-sentencing in light of United States v. Booker, 125 S. Ct. 738 (2005), and the Court of Appeals's decision in United States v. Crosby, No. 03-1675, 2005 WL 240916 (2d Cir. Feb. 2, 2005). On December 6, 2005, as a result of the remand order, the Court issued an order and asked the parties to file on or before January 6, 2006, memoranda concerning whether a non-trivially different sentence should be imposed. This memorandum is filed in response to that order. As discussed more fully below, a non-trivially different sentence should not be imposed in this case. The Court should reimpose the same sentence previously imposed, and a new Judgment should enter, from which the defendant may file his Notice of Appeal.

I.  **PROCEDURAL AND FACTUAL BACKGROUND RELEVANT TO SENTENCING**

On June 30, 2004, after a three-day trial, a Bridgeport Federal jury returned a guilty verdict, finding the defendant Reynaldo Arroyo guilty of possession of a firearm by a convicted

felon, in violation of 18 U.S.C. § 922(g). The evidence at trial included the eye-witness testimony of two Hartford police officers who testified they saw the defendant in possession of a firearm. Specifically, they both testified that, shortly after hearing a gunshot, they saw the defendant outside the Silver Dollar holding in a shooter's stance what appeared to be a firearm, and that upon noticing the police officers he immediately turned and ran into the Silver Dollar where the subject firearm was located in a bathroom trash can. The defendant presented testimony from two witnesses, William Rivera and Joseph Lapenta, who presented accounts of the incident conflicting with the officers' as well as each other's. The jury credited the testimony of the officers and returned a guilty verdict.

A Presentence Report was filed, which calculated the defendant's offense level as 20 and his criminal history category as IV, yielding a Sentencing Guideline range of 51 to 63 months. The defendant did not object to the Guideline calculation. At sentencing, the defendant did not accept responsibility but continued to maintain he was innocent of the charge despite the jury verdict. The Court sentenced the defendant to the bottom of the Guideline range.

Judgment entered on November 30, 2004, imposing a sentence of 51 months imprisonment and three years supervised release.

## II.    DISCUSSION

### A.    Sentencing in the Wake of Booker

In United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates

the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." Booker, 125 S. Ct. at 757. This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to appellate review for "reasonableness." Id. at 765.

The Court of Appeals for the Second Circuit has offered some initial guidance to sentencing courts on how to proceed with sentencings in the wake of Booker. In United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the Court summarized the impact of Booker as follows:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). ***Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range,*** or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. ***Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.*** Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

Id. at 113 (emphasis added).

In other words, a sentencing now involves two analytic stages: first, a determination of the applicable Guideline range (including any departures); and second, a determination of whether in light of the Guidelines and the other factors listed in § 3553(a), there is any reason to impose a non-Guidelines sentence.

As to the first stage, the applicable Guideline range "is normally to be determined in the same manner as before Booker/Fanfan." Id. at 112. In limited circumstances, "precise

calculation of the applicable Guidelines range may not be necessary" when a judge determines that either of two (not necessarily overlapping) ranges applies, and if "the sentencing judge, having complied with section 3553(a), makes a decision to impose a non-Guidelines sentence, regardless of which of the two ranges applies." Id.  Such may be true in cases involving "complicated matters, for example, determination of monetary loss," or "close questions . . . as to the precise meaning or application of a policy statement authorizing a departure." Id.  In general, however, the first stage requires the Court to engage in the familiar process of making factual findings by a preponderance of the evidence, and interpreting and applying the Guidelines to those facts in order to ascertain the appropriate sentencing guidelines range.

As to the second stage, the judge must consider the guidelines in conjunction with the other factors enumerated in § 3553(a), in order to determine whether there is any reason to deviate from the guideline range indicated in the first stage.  These factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, © to protect the public from the defendant, (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims.  18 U.S.C. § 3553.

Because the Guidelines reflect the Sentencing Commission's considered judgment about

all of the factors set forth in § 3553(a), the Supreme Court and the Second Circuit have made it clear that the Guidelines continue to play a central role in a sentencing court's § 3553(a) calculus. Writing for the remedial majority in Booker, Justice Breyer explained that sentencing courts, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." 125 S. Ct. at 767. As the Court of Appeals has pointed out, "the excision of the mandatory aspect of the Guidelines does not mean that the Guidelines have been discarded." Crosby, 397 F.3d at 111.

> [I] is important to bear in mind that *Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge. Thus, it would be a mistake to think that, after *Booker/Fanfan*, district judges may return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum. On the contrary, the Supreme Court expects sentencing judges faithfully to discharge their statutory obligation to "consider" the Guidelines and all of the other factors listed in section 3553(a). We have every confidence that the judges of this Circuit will do so, and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice. In short, there need be no "fear of judging."

Id. at 113.

In the vast majority of cases, a sentence within the advisory guideline range will be the most effective way of promoting uniform, fair sentencing throughout the nation in compliance with § 3553(a). This view is shared by Congress and the Supreme Court. As every Supreme Court justice in the various opinions in Booker recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history. See, e.g., Booker, 125 S. Ct. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759

(same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity."). See also United States v. Wanning, 354 F. Supp. 2d 1056, 1060 (D. Neb. 2005) ("The Guidelines and their ranges were explicitly crafted by the Sentencing Commission at the direction of Congress to implement the statutory purposes of sentencing.").

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of 15 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address all of the considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), not least of which are the nature and circumstances of the offense (which are covered thoroughly in Chapters 2 and 3 of the Guidelines Manual), the history and characteristics of the defendant (which are covered in Chapter 4 with respect to criminal history and Chapter 5 with respect to departures based on the most commonly considered personal characteristics), and the need to provide restitution to victims (Chapter 5, Part E).

Thus, fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing outlined in § 3553(a), and should occur absent truly unusual circumstances. See Wanning, 354 F. Supp. 2d at 1061 (concluding that "judges should, in the exercise of their newly

minted discretion, normally follow the Guidelines, and the ranges produced by them, because that approach represents the best (though an imperfect) method of sentencing"). Accordingly, a sentence within the guideline range is presumptively reasonable, and accommodates the congressional purpose set forth in § 3553(a), affirmed by the Supreme Court, of obtaining fair sentences which are uniform to the extent possible. The government anticipates that only sentences outside the guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate, absent truly extraordinary circumstances.

> B.  **The Court's 51 Month Sentence Resulted From A Guideline Range Which Accounted For The Factors Set Forth in § 3553(a)**

The sentence imposed here at the original sentencing on November 29, 2004 is clearly reasonable under the circumstances of the incident and considering the criminal history of the defendant. The defendant at the time of the incident had a substantial criminal history including a conviction for sale of a controlled substance, thus yielding an offense level of 20 under the Sentencing Guidelines. The substantial danger to the community of firearms in the hands of felons, particularly of drug dealers, is well accepted. Moreover, the criminal history of the defendant at the time of the sentencing reflected in the Presentence Report, including another sale of a controlled substance conviction after this incident, as well as convictions for possession of narcotics, interfering with police and assault in the third degree are significant. Additionally, two points are reasonably added as a result of the defendant serving a period of probation when he committed the instant offense. Criminal history category IV, which when considered in conjunction with an offense level 20 yields a Sentencing Guideline range of 51 to 63 months, is clearly reasonable. A sentence within that range is appropriate and reasonable. The conduct here of not only possessing a firearm, but possessing that firearm shortly after shots were fired and

then running from police officers and attempting to dispose of that firearm, is clearly conduct that is dangerous and must be punished, both for specific and general deterrence. Moreover, a sentence within the Guideline range will satisfy "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

### III. CONCLUSION

To the Government's knowledge, there are no factors which would suggest that some lesser sentence would have been appropriate, and, therefore, a guidelines sentence is reasonable in this case. A non-trivially different sentence should not be imposed, even though the Sentencing Guidelines have been held to be advisory. Based on the argument set forth above, the Court should sentence the defendant to the same sentence previously imposed, that is, 51 months imprisonment and three years supervised release.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

BY:
FELICE DUFFY
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct21379

FOR: THOMAS V. DAILY
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct03467
450 Main Street
Hartford, CT 06103
(860) 947-1101

<u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was mailed this 6th day of January, 2006, to:

Paul Thomas, Esq.
Assistant Federal Public Defender
2 Whitney Avenue, Suite 300
New Haven, CT 06510

        BY: _____
            FELICE DUFFY
            ASSISTANT UNITED STATES ATTORNEY

        FOR: THOMAS V. DAILY
            ASSISTANT UNITED STATES ATTORNEY