UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| vs. | : CRIMINAL NO. 3:03CR179(SRU) |
| REYNALDO ARROYO | : January 17, 2006 |

**DEFENDANT'S MEMORANDUM ON RESENTENCING
PURSUANT TO BOOKER/CROSBY REMAND**

**Introduction**

By Scheduling Order dated December 6, 2005, this Court directed the parties to file their positions as to whether a non-trivially different sentence should be imposed in this case in light of United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005) and United States v. Crosby, 397 F. 3d 103 (2d Cir. 2005). For the reasons discussed below, and upon the earlier record, defendant Reynaldo Arroyo urges the Court to find that such a sentence should be imposed and, accordingly, to schedule re-sentencing.

**1.    Prior Proceedings**

On December 31, 2002, Reynaldo Arroyo was arrested by Hartford police and charged with the unlawful possession of a firearm. That case was essentially federalized six months later when, on June 19, 1993, a grand jury charged Mr. Arroyo with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). At his presentment and arraignment on July 17, 2003, the undersigned counsel was appointed to represent Mr. Arroyo. The case then proceeded to trial, and a jury returned a guilty verdict on November 6, 2003. Defendant filed a timely motion for new trial on November 12, 2003, and the Court granted that motion on January 27, 2004.

On May 5, 2004, retained counsel filed an appearance for Mr. Arroyo and one week later the Court granted a motion to withdraw filed by the undersigned counsel. The case was proceeded to trial, and a second jury returned a guilty verdict on June 30, 2004. Counsel for Mr. Arroyo then filed an untimely motion for new trial, and the Court denied that motion on October 12, 2004.

Following his conviction at the second trial, the case was referred to the United States Probation

- 2 -

Office to prepare a Presentence Report, and the Report was completed and disclosed to counsel on August 19 ,2004. An Addendum to the Report, dated September 1, 2004, calculated a Sentencing Guidelines range of imprisonment of 51-63 months, based on its corrected determination that the total offense level was 20 rather than 24 and the criminal history category was IV Neither party filed objections to the Report or to the Addendum. Counsel for Mr. Arroyo filed no memorandum in aid of sentencing, and, on November 29, 2004, the Court sentenced Mr. Arroyo to imprisonment for a term of 51 months, followed by three years supervised release.

In his allocution at sentencing, Mr. Arroyo declared his intention to appeal the conviction, but his counsel failed to file a notice of appeal. Mr. Arroyo himself then filed an untimely pro se appeal on April 26, 2005. This Court then re-appointed the undersigned counsel to represent Mr. Arroyo and he filed a Motion to Vacate Judgment on June 15, 2005. This Court denied the motion to vacate on September 2, 2005, and counsel then filed at the Court of Appeals a Motion to Dismiss Appeal and to Remand for Re-Sentencing and Entry of New Judgment. By Order dated October 18, 2005, the Court of Appeals granted the motion and remanded "for entry of a new judgment and for re-sentencing in light of *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005), and this Court's decision in *United States v. Crosby*, 397 U.S. 103 (2d Cir. 2005)[.]" In response to that remand, this Court ordered the Presentence Report disclosed to the undersigned counsel and directed the parties, should they wish to do so, to file written submissions concerning whether the Court would have " imposed a non-trivially different sentence in this case if the Sentencing Guidelines had been advisory."

2.      **Consideration of Re-sentencing under Crosby**

The recent decision in United States v. Booker, ___ U.S. ___, 125 S .Ct. 738 (2005), requires sentencing courts to consider the Guidelines in "tailoring" a sentence to the particular circumstances of the individual offender and the specific offense in a given case. The Court is no longer mandated, however, to impose a sentence within the Guideline range. Instead, the Guidelines and the calculated Guidelines range are but one of the factors the Court must "consider" in determining a sentence. Now, as before Booker, sentencing courts are required to impose a sentence "sufficient but not greater than

- 3 -

necessary, to comply with the purposes set forth in paragraph (2) of [18 U.S.C. § 3553(a)]." These purposes are:

> (2) the need for the sentence imposed -
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2).

In United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the Second Circuit reviewed Booker and explained how courts should now approach sentencing and the determination of an appropriate sentence. The Crosby Court noted that "[t]he Supreme Court's decision in Booker/Fanfan significantly altered the sentencing regime that has existed since the Guidelines became effective on November 1, 1987[,]" id. at 108, and that "[t]he most significant aspect of the [Booker/Fanfan] Remedy Opinion is the excision of subsection 3553(b)(1), with the result that the use of the Guidelines to select a sentence is no longer mandatory. . . ." Id. at 110 (emphasis added).

Under 18 U.S.C. § 3553(a), a sentencing judge must consider several factors, including the Guidelines. Id. The statutory duty to "consider" the Guidelines means that "a sentencing judge will normally have to determine the applicable Guidelines range[,]" and "[t]he applicable Guidelines range is normally to be determined in the same manner as before Booker/Fanfan." Id. at 111. While the sentencing judge must determine the Guidelines range in order to "consider" it, Crosby expressly declined to "determine what degree of consideration is required, or, to put it another way, what weight the sentencing judge should normally give to the applicable Guidelines range." Id. at 113. What a sentencing court must do, then, is "consider the Guidelines and all of the other factors listed in section 3553(a)." Id. (emphasis added). After considering the relevant factors in light of the principle that "the

- 4 -

Guidelines are no longer mandatory[,]" the sentencing judge must decide "whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence." Id.

3.  **The Original Sentence Within the Guidelines Range Would Not Have Been Imposed Had the Court Treated the Guidelines as Advisory.**

The Presentence Report calculated a sentencing range of 51-63 months, based upon its determination of a total offense level of 20 and a criminal history category of IV. Counsel for Mr. Arroyo did not object to this calculation, did not file a sentencing memorandum and did not seek a departure from the Guidelines range. Instead, he focused on inconsistencies in the evidence upon which the jury convicted Mr. Arroyo and asked for a sentence at the low end of the applicable range, which the Court did. In so doing, however, the Court acted as required then in conformity with the Sentencing Guidelines and, unfortunately, without any request by defendant's counsel for a departure.

At sentencing, the Court noted that "it's a little unusual to be addressing a defendant who even at sentencing is still asserting his innocence," and it then explained that "I have to assume at this point the validity of the jury's verdict." Transcript of Sentencing (Tr.) at 21. What counsel for Mr. Arroyo failed to present in that unusual circumstance, and what the Court, therefore, had no reason to consider, was whether a Guidelines sentence correctly calculated for a typical felon-in-possession case of a person with Mr. Arroyo's criminal history was greater than needed to achieve the statutory purposes of sentencing where the possession of the firearm, upon the entire record, was atypical, brief and of a less serious nature than what is usual and may warrant a sentence of 51 months imprisonment.

In his remarks at sentencing, counsel for the government commented on certain background evidence that had not been presented at trial: "Ivan Maldonado both said on the videotape that he'd handed the gun to the defendant, Reynaldo Arroyo, this evening and as part of his written statement indicated that Reynaldo Arroyo picked up the gun on the evening in question." Tr. at 17-18. Although this point was offered to show that the defendant had possessed the firearm even according to his brother and even if the police witnesses, the same facts were set forth in the Presentence Report, PSR

- 5 -

¶ 7, it could have been considered by the Court and should have been advanced by defendant's counsel as mitigating evidence regarding the duration and purpose of the defendant's possession

Under 18 U.S.C. § 3553 (a)(2)(A), the first of the non-Guidelines purposes of sentencing is "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" While these objectives require a careful, case-by-case consideration of the particular possession of a firearm by a felon, such as the purpose for which the defendant possessed the gun, the Sentencing Guidelines reduce this analysis to several simplistic consideration which fail to give adequate weight to the particulars of the possession in this case. Under U.S.S.G. 2K2.1, the base offense level is based on the type of firearm and the defendant's prior felony record. Because Mr. Arroyo, who was 28 years old at the time of the offense, had been convicted of a qualifying drug offense committed several weeks after he turned 18, his base offense level was 20. Absent that conviction, for which Mr. Arroyo had been sentenced to probation, under Section 2K2.1 his base offense level would have been 14. This a priori categorical determination of the seriousness of the offense and need for punishment embodies in the Guidelines raised the presumptive sentencing range, absent any other adjustments, from 27-33 months to 51-63 months for a person in defendant's criminal history category.

Somewhat contradictorily, although the Sentencing Guidelines assess the seriousness of the gun offense largely on the basis of pertinent criminal record as of the time of the offense, require the defendant's criminal history category to be determined as of the date of sentencing. In this case, that Guidelines requirement required the addition of three points for a conviction in 2003 and resulted in sentencing at criminal history category IV rather than III. As with the assessment of points in Chapter Two of the Guidelines for facts that arguably aggravate the basic offense and support a longer sentence, this fact may bear some consideration at sentencing but it should not be overvalued, particularly where, as here, the severity of the offense has been pre-determined to be significantly greater due to a ten year old sentence of probation for a drug distribution felony committed shortly after the defendant became an adult for legal purposes.

In tailoring a sentence to fit this offense and this offender, with consideration of the Guidelines

- 6 -

but without unwarranted acceptance of ill-fitting "off-the-rack" sentencing range pre-cut by the Sentencing Commission, this Court can and should give consideration to the mitigating information about the nature of the defendant's possession of the firearm. Likewise, the Court can and should give consideration to the fact that before his arrest in this case Mr. Arroyo had never been imprisoned, PSR ¶¶ 27-32, and, therefore, the need to impose a longer sentence upon a recidivist who fails to respond to escalating sanctions is not present to the degree typical of a person in criminal history category IV.

### Conclusion

As a result of the fortuity of the failure by Mr. Arroyo's re-trial counsel to file a timely appeal, this case comes back to this Court for consideration of re-sentencing under United States v. Crosby, 397 F. 3d 103 (2d Cir. 2005). At the original sentencing, before the Supreme Court decision in United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005), this Court, acting in accordance with the Sentencing Guidelines and with no request from counsel to consider departing downward, imposed a sentence at the low end of the applicable Guidelines range and further made that sentence concurrent with a state sentence then being served. For the reasons stated above, which properly may be considered in determining a sentence sufficient to satisfy the statutory mandates regarding imposition of sentence, we urge the Court to find that it would have imposed a non-materially different sentence upon Mr. Arroyo had the Sentencing Guidelines then been, as they now are, advisory. According, the defendant urges the Court to schedule this case for a re-sentencing hearing.

Respectfully submitted,

THE DEFENDANT,
REYNALDO ARROYO

THOMAS G. DENNIS
FEDERAL DEFENDER

Dated: January 17, 2006

Paul F. Thomas
Asst. Federal Defender
2 Whitney Ave., Suite 300

- 7 -

New Haven, CT 06510
Bar No. ct01724
(203) 498-4200

## CERTIFICATION

I HEREBY CERTIFY that a copy of the foregoing DEFENDANT' MEMORANDUM ON RE-SENTENCING PURSUANT TO BOOKER/CROSBY REMAND has been mailed to Thomas Daily, 450 Main Street, Hartford, CT 06106, on this 17th day of January 2006.

_____
Paul F. Thomas